DANI ENTERPRISES, INC., C. Patrick Kennedy, Norrell Services, Inc., Plaintiffs,

v.

UNITED STATES SMALL BUSINESS ADMINISTRATION, et al., Defendants.

Civ. A. No. 90–3112.

United States District Court, District of Columbia.

Feb. 27, 1991.

Charles A. Patrizia, Martin S. Putnam, Paul, Hastings, Janofsky & Walker (Phillip Leslie Wharton Norrell Services, Inc., of counsel), Washington, D.C., for plaintiffs.

James R. Layton, Asst. U.S. Atty., David A. Fishman, Small Business Admin., Washington, D.C., for defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

Plaintiffs Dani Enterprises, Inc. ("Dani"), C. Patrick Kennedy ("Kennedy"), and Norrell Services, Inc. ("Norrell"), brought this complaint for declaratory and injunctive relief against the Small Business Administration ("SBA"). Dani and Kennedy are franchisees of Norrell, and all are companies which provide temporary-help services to businesses, industry and government. Plaintiffs have moved for a preliminary injunction restraining defendant from enforcing a November 26, 1990 final determination by the SBA Office of Hearings and Appeals ("OHA") that Dani and Kennedy are other than small businesses, pursuant to SBA's regulations, 13 C.F.R. Part 121, and the SBA Act, 15 U.S.C. § 632(a). Defendant has opposed the motion for preliminary injunction.

This Court has before it the administrative record and other affidavits and has heard oral argument. Because both plaintiffs and defendants agree that all relevant information is currently before the Court, a decision on this motion as well as summary judgment on the merits of the underlying complaint will be consolidated under Rule 65(a)(2) of the Federal Rules of Civil Procedure, as requested by the parties.

*Background*

Norrell is a Georgia corporation which has developed a national reputation for its system of providing to business, industry and government temporary personnel to perform certain jobs and services. In some areas of the country, Norrell's system is implemented and marketed through offices owned and managed by Norrell, while in other areas, Norrell has licensed franchisees which use the Norrell system, name and trademarks. Dani and Kennedy are both Norrell franchisees.

SBA is an administrative agency charged with the responsibility for making determinations about whether a business constitutes a "small-business concern" pursuant to 15 U.S.C. § 632(a). The Administrator of SBA is responsible for making detailed definitions of "small business concerns" and making whatever rules are necessary to carry out the SBA's determinations.

Dani submitted a blanket purchase agreement application to the Naval Supply Center, in Norfolk, Virginia, on March 1, 1990. The Center then requested a formal size determination with respect to Dani from the Philadelphia Regional Office of the SBA, because the application was limited to small businesses. On June 29, 1990,

after reviewing Dani's submissions, the Regional SBA Office found that Dani was not a small business.

A parallel chain of events was set off when Kennedy submitted a bid to the Department of the Navy, Naval Underwater Systems Center in New London, Connecticut, to provide temporary-help services. This contract was set aside exclusively for small businesses. The Naval Center announced its intention to award the contract to Kennedy, but an unsuccessful bidder filed a size protest, prompting the SBA's Region I Office to investigate. The Region I Office issued a formal determination on July 12, 1990, that Kennedy was not a small business.

Both Dani and Kennedy appealed the SBA's size determination to the OHA. On August 9, 1990, the two appeals were consolidated before the OHA. On September 18, 1990, the OHA issued its original decision, and on November 26, 1990, after a series of procedural difficulties, the OHA issued its final decision that Dani and Kennedy were not small businesses.[1]

The OHA upheld the SBA's finding of "common management" control. The OHA ruled that SBA's determination that the franchisees were "affiliates" of Norrell rather than independent entities were correct based on the restraints provided for in the franchise agreement. This determination prevents Dani and Kennedy from bidding on government contracts which are set aside for small businesses. Plaintiffs now ask this Court to enjoin enforcement of that decision.

*Discussion:*

In order to succeed on the preliminary injunction motion and on the merits of the underlying claim, plaintiffs must show that the challenged SBA decisions were "arbi-

trary, capricious, an abuse of discretion, or otherwise not in accordance with law," as required under the Administrative Procedure Act, ("APA") 5 U.S.C. § 706(2)(A).[2] Plaintiffs make two arguments in an effort to meet the APA test. They argue first, that the SBA's decision was inconsistent with its own regulations, and second, that the decisions was not supported by the factual record. The SBA contends that its decision was completely in accordance with the law as well as the facts.

The primary SBA regulation at issue in this case is 13 C.F.R. § 121.401(m) (1990), which sets forth specific tests and criteria for determining whether an "affiliation," or control, exists between a franchisee and a franchisor such that the franchisee cannot be considered a small business. § 121.401(m) provides:

Affiliation under franchise and license agreements. In determining whether the franchisor controls or has the power to control and, therefore, is affiliated with the franchisee, the restraints, relating to standardized quality, advertising, accounting format and other **provisions, imposed on a franchisee by its franchise agreement shall generally not be considered, provided that the franchisee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. Alternatively,** even though a franchisee may not be controlled by the franchisor by virtue of such provisions in the franchise agreement, control and, thus, **affiliation could arise through other means, such as common ownership, common management or excessive restrictions upon the sale of the franchise interest.**

(Emphasis added.) The first point of contention in this case is whether, under

---

**1.** September 18, 1990, Decision No. 3345; November 26, 1990, Decision No. 3379.

**2.** In order to succeed on a motion for preliminary injunction, plaintiffs must show (1) that they are likely to succeed on the merits; (2) that they will suffer irreparable harm if injunctive relief is denied; (3) that the other parties will not suffer substantial injury if injunctive relief is granted; and (4) that the granting of injunctive relief is in the public interest, or at least not

adverse to the public interest. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977). Because plaintiffs must show at least a likelihood of succeeding on the merits in order to prevail in their motion for preliminary relief, a finding by this Court that the defendants will prevail on the merits disposes both of the motion for injunctive relief and the action in its entirety. Hence, the discussion has been consolidated.

§ 121, the SBA's decision to look to the franchise agreement for a determination of "control" was arbitrary and capricious.

■ Plaintiffs contend that under the § 121 regulation, there should be no finding of control "provided that the franchisee has the right to profit from its efforts and bears the risk of loss commensurate with ownership." As long as right to profit and risk of loss exist, plaintiffs argue, the regulation provides that the SBA is to look no further in determining that the franchisee is a separate entity and is not "affiliated" with or controlled by the franchisor.

According to plaintiffs, the SBA never found that the franchisees lack the right to profit or the risk of loss, and therefore, the SBA should never have considered the franchise agreement or other indicia of the relationship as the basis for a finding of control. Because the SBA considered these elements despite finding a right to profit and risk of loss, plaintiffs contend, its determination of franchisor control was necessarily inconsistent with its regulations.

The SBA contends that its actions and determinations were completely in accordance with the regulations. The regulation contains the word "generally" in prohibiting consideration of the franchise agreement and other alternatives upon a finding of right to profit and risk of loss. The SBA argues that the facts in this case presented the agency with an unusual type of arrangement which required that it investigate more fully rather than follow the "general" procedure. While it did find that Dani and Kennedy had some rights and bore some risks, the agency explains, that was only to a limited extent. Although the profit and risk test was at least arguably met, the SBA contends that it was concerned by the fact that Norrell bore 60% of the risk of loss from uncollectible accounts and was entitled to the greater of 60% of the gross profits or 15% of the net billings. Thus, the right to profit and the risk of loss

in this case was not entirely "commensurate with ownership," and rather than automatically determining independent status, the agency chose to investigate further to ensure that the franchisees were in fact independent entities rather than affiliates of Norrell.

There is ample support for defendants' argument in the administrative record, despite plaintiffs' argument that this is a new theory proffered by defendants only after the groundless OHA decision. In its opinion on SBA's determination, the OHA expressly stated that "[w]hile Appellants do profit from their efforts and bear the risk of loss, it is not in a manner characteristic of independently owned and operated businesses."[3] The franchise agreement was part of the record before the OHA, and its conclusion was clearly based upon that agreement. The OHA noted, looking at the provisions of the agreement, that Norrell was responsible for wages, taxes, and benefits as well as for billing, and noted that uncollectibles were borne 60% by Norrell.[4] Thus, while there was some indicia of right to profit and risk of loss, these were not sufficiently "commensurate with ownership," to lead to an automatic determination as mandated by the regulation. Instead, the SBA proceeded to investigate the franchise agreement more closely.

Plaintiffs have argued that in *Appeal of Handyman Network, Inc.,*[5] a case dealing with the same Norrell franchise agreement, the SBA stopped its inquiry after finding that the franchisee had the right to profit and bore the risk of loss. Plaintiffs fail to realize that *Handyman* was decided under the old SBA regulations, 13 C.F.R. § 121.3(a) and 121.3(a)(viii)(E) which provided that once a right to profit and risk of loss were found, the SBA could never proceed to investigate the franchise agreement further in order to determine control.[6] The regulations were amended effective Janu-

---

3. September 18, 1990, Decision No. 3345 at 5.

4. *Id.*

5. Decision No. 3216 (1989).

6. "[R]estraints imposed upon a franchise by its franchise agreement *shall not be considered....* if the franchisee has the right to profit from his effort, commensurate with ownership, and bears the risk of loss or failure" (emphasis added).

ary 1990. In § 121.401(m), the term "generally" was inserted into the prohibition on investigating further once the initial profit and loss finding has been made. Under the new regulations, even once the agency finds that the franchisee has the right to profit and risk of loss, it may *sometimes* investigate further. Thus, at the time *Handyman* was decided, the SBA's hands were tied once the agency found there was at least arguable right to profit and risk of loss. The agency formally amended its regulations to allow for further investigation precisely because of situations such as the one presented by *Handyman,* where the agency felt that the profit and risk test was not productive as an absolute rule. *Handyman* is thus not dispositive of this case, and the agency has in fact argued that *Handyman* should be overturned.

SBA is empowered by Congress with the responsibility of defining what is or is not a "small-business concern." 15 U.S.C. § 632(a)(1) (1988). In doing so, SBA necessarily must interpret its own regulations. "An agency's interpretation of its own regulations will be accepted unless it is plainly wrong." *General Carbon Co. v. Occupational Safety and Health Rev. Comm'n,* 860 F.2d 479, 483 (D.C.Cir.1988). Here, the agency interpreted whether it should apply an exception to the general rule which would simply allow the agency to give fuller consideration to an important determination.

There are without question enough facts in the record to support SBA's application of its regulation. The Norrell franchise agreement specifically sets out the profits and loss arrangement, and it is this agreement which troubled SBA in its determination of right to profit and risk of loss.[7] Plaintiffs argue that in fact Norrell exercises only "ministerial" control, that it serves only as a "number cruncher," so that it really has no control over profit and does not in fact bear the risk of loss. While plaintiffs may argue that these facts should have been given a different interpretation, the agency's interpretation of

the facts was certainly far from "clearly erroneous." The agency, in attempting to comply with the Congressional mandate to responsibly determine whether Dani and Kennedy were in fact small businesses, was responsible for investigating further anything which it interpreted as being inconsistent with ownership. Thus, its decision to further investigate Dani and Kennedy was certainly not arbitrary and capricious.

The second major point of contention in this case is whether the investigation which the SBA conducted could have reasonably resulted in a finding of control. That finding was based on a determination of "common management." Plaintiffs attack this on a number of grounds. Their first argument is that the determination of "common management" control was arbitrary and capricious as it was not based on any "of the regulatorily established criteria for control."[8]

Plaintiffs contend that the SBA's determination of control was based on impermissible or at least irrelevant facts and that the more pertinent facts on the record demonstrated overwhelmingly that there was no control. They argue that the regulations permit only certain facts to be considered, and since none of these facts were proved, the determination was arbitrary and capricious.

The SBA contends that its determination of control was based upon a consideration of facts which the agency is not only permitted but mandated to consider under the regulations. According to the SBA, once the agency decides to investigate the franchise agreement and other alternatives to determine whether control exists, its mandate to consider all means by which control might be found allows it to broadly analyze the relationship between franchisor and franchisee, and it is not bound strictly to specifically enumerated indicia of "common management" control proposed by plaintiffs. The SBA contends that an analysis of the facts in this case provide ample

---

**7.** Norrell franchise agreement, at 3.

**8.** Pl.Mem. at 21.

support for a finding of common management, and hence, control or affiliation.

The SBA's determination in this case was based on provisions in the franchise agreement. The OHA noted that the SBA's determination was based upon the following provisions which demonstrated common management: [9]

- Franchisee must pay Norrell a continuing fee and royalty equal to 60% of its gross profits or 15% of its net billings, whichever is greater.
- Norrell is responsible for all billing of customers.
- All the temporary employees to be furnished to customers are hired by franchisees but are employees of Norrell and not of the franchisees. Norrell provides all their pay and benefits, and handles all the bookkeeping and the payroll accounts and bills customers. Additionally, Norrell pays all Federal and local taxes.
- Uncollectibles are borne 60% by Norrell and 40% by the franchisees.
- The franchisees must deposit with Norrell a sum equal to 2% of net billings.... Norrell may, at its option, deduct a greater amount. (PAGE 3⁹/18)

The SBA found, and the OHA agreed, that these controls in the franchise agreement were "extensive enough" so that "the franchisee must be considered an affiliate for size determination purposes." [10] Despite the fact that Dani and Kennedy controlled much of the day to day business of their operations, the OHA ruled, "the record clearly demonstrates that Norrell, not the franchisees, controls the ultimate franchisee's product ... and controls therefore the franchisees." [11]

Most crucial in the SBA's determination were the facts that the franchisees' employees were in fact employees of Norrell, that Norrell controls the billing and collection process, and that Norrell bears 60% of the uncollectibles.[12] Plaintiffs argue that these facts may not be the basis for a finding of "common management" control under the SBA's regulations. Plaintiffs point to § 121.401(h), which reads:

Affiliation through common management. Affiliation generally arises where officers, directors or key employees serve as the majority or otherwise as the controlling element of the board of directors and/or the management of another concern.

Furthermore, plaintiffs argue, § 121.401(c)(2) provides that under any test, control can be found only if there is evidence of shared management, centralized stock ownership, or centralized business or contractual decision-making. According to plaintiffs, because there was no evidence of shared managers, officers, or directors, no evidence of centralized stock ownership or business or contractual decision-making, there is no way that the SBA could find "common management" within the scope of the regulations.

The SBA contends that there is no restriction on the factors to be considered in finding "common management" control, or "control" in general. In support of this, the agency points to the language of § 121.401(h), which defines common management: the regulation states specifically that common management affiliation is "generally" found where there are shared officers and directors. The SBA argues that the regulation thus signals that it does not contain an exhaustive list of the factors which may result in common management, but simply enumerates some of the most common examples.

Similarly, the SBA points out, § 121.401(c)(2), which the plaintiffs argue limits a determination of control to finding common directors, stock ownership, or business relations, specifically includes language which provides control can arise through any of these factors as well as "combinations of these *and other factors.*" (Emphasis added.) In addition, the agency contends that the regulations *require* a broader analysis: "In determining whether

---

**9.** September 18, 1990, Decision No. 3345 at 3.

**10.** November 26, 1990, Decision No. 3379 at 5.

**11.** *Id.,* at 6.

**12.** *Id.*

affiliation exists, consideration shall be given *to all appropriate factors.*" § 121.401(a)(3) (emphasis added).

▪ The SBA's interpretation of its regulations in this case is entirely reasonable. The regulations clearly permit the SBA to consider a broad range of factors in determining whether a business is a "small business concern." There is nothing in the regulations to suggest that there was any intention, either by Congress or by the agency itself, to limit the factors which the SBA was permitted to consider in determining size. Nor does the fact that a determination of "common management" has frequently been based, for example, on joint directors or managers support plaintiffs' argument that the agency is restricted to those factors. The fact that this case presented the SBA with different factors than other cases may have does not mean that the SBA has departed from its own regulations or policies in any way.

The OHA felt that the facts on the record clearly provided evidence of "other factors" sufficient to support a finding of common management. The OHA considered plaintiffs' evidence of separate managers and officers and of plaintiffs' control of much of their day-to-day business. Nonetheless, the OHA considered the restrictions of independent control in the franchise agreements sufficient evidence of management by Norrell. Such a conclusion is adequately supported by the facts on the record and can in no sense be considered arbitrary and capricious. Where the franchisor by contract has control over many aspects of the franchisees' business, including employees and billings, it is fair to label this arrangement as "common management." In other words, the test of common management can be met by a contractual arrangement.

▪ Plaintiffs' final argument is that the SBA's determination was arbitrary and capricious because it was based on restraints in the franchise agreement which do not actually reflect the reality of the relationship between Norrell and its franchisees.

Plaintiffs argue that SBA's reliance on the franchise agreement rather than on the alleged reality of the franchise relationship demonstrates that the SBA ignored both its own regulations and the facts on the record. Plaintiffs point to § 121.401(k), which reads:

Affiliation through contractual relationships. Affiliation generally arises where once [sic] concern is dependent upon another concern for contracts and business to such a degree that its economic viability would be in jeopardy without such contracts/business.

Accordingly, plaintiffs argue, if the SBA seeks to base a determination of control upon the franchise agreement, which is a contractual relationship, it must meet the standard set out in § 121.401(k).

Plaintiffs contend that there is extensive evidence in the record that despite any wording in the franchise agreements, the intent of the parties, as demonstrated by the actual, day-to-day nature of their relationship, demonstrates that in practice the franchisees are not "dependent upon another concern for contracts and business." Therefore, plaintiffs argue, any control here is at most "hypothetical control." A determination of control is, according to plaintiffs, at odds "with black letter law that a contract be interpreted according to the intent of the parties" and ignores all the facts on the record.[13]

This argument was addressed in the OHA's final decision. Despite the day-to-day relations between the parties, the OHA ruled, there was enough evidence given the restraints in the franchise agreement to find that plaintiffs' rights in the relationship with Norrell "were those associated with an agent, rather than ... an independent owner."[14] Whether or not the power is implemented, the agreement gives Norrell the authority to hire and contract with all the temporary employees, for example, to directly bill customers for work and services performed by the franchisee, and provides that the franchisees provide business-

13. Pl.Reply at 6.

14. November 29, 1990, Decision No. 3379 at 6.

es with temporary employees "on behalf of Norrell." [15] Thus, there is certainly a factual basis for a conclusion that the agreement provides for control. Moreover, despite plaintiffs' arguments to the contrary, there is ample evidence that the OHA's ruling of "common management" control was based on the provisions in the franchise agreement. "These elements in the franchise agreement, therefore, result in control by Norrell of its franchisees great enough to render Appellants affiliates of Norrell and not truly independent businesses." [16]

Moreover, the regulations clearly permit a consideration of the franchise agreement. § 121.401(m) specifically refers to the provisions of the agreement in determining control. Furthermore, § 121.401(c)(1) provides that "Control may be affirmative or negative and it is immaterial whether it is exercised so long as the power to control exists." This clearly allows for a finding of control based on the franchise agreement even where the restraints in that agreement are not being exercised.[17] As the agency points out, an interpretation which would require a determination to rely on current practice "would open the door to constant manipulation of small business status." [18]

An agency's "interpretation of its own regulations is of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Secretary of Labor v. Western Fuels–Utah*, 900 F.2d 318, 321 (D.C.Cir.1990) quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *Hispanic Information and Telecommunications Network v. FCC*, 865 F.2d 1289, 1296 (D.C.Cir. 1989). The SBA's interpretation and application of its regulations is clearly consistent both with the plain meaning of those regulations and with its Congressional mandate. Because that interpretation is in no way plainly erroneous, it must be given deference by this Court.

In this case, the SBA was alerted to irregularities concerning the franchisees of Norrell that suggested that the franchisees were actually affiliates of Norrell and thus not independent "small business concerns." The SBA's regulations permit it and in fact mandate it to investigate such situations so that only true small businesses will receive the benefits which are reserved for such concerns. Thus, in accordance with its regulations, the SBA investigated the franchise agreement. That agreement contained enough restraints and enough provisions for potential control to convince the SBA that these franchisees should not be considered small business concerns.[19] Based on that agreement, this Court is constrained to agree with the SBA's conclusion.

The decision of the SBA was neither arbitrary nor capricious. It was consistent with the agency's regulations and supported by the administrative record. The determination was a reasonable conclusion based on the franchise agreement between Norrell and its franchisees. Accordingly, plaintiffs are unable to meet their burden of proof on their motion for injunctive relief or on the case in chief. Accordingly, plaintiffs' motion for a preliminary injunc-

**15.** Franchise Agreement, ¶¶ 8(e), 8(f), and 7(k).

**16.** November 29, 1990, Dec. No. 3379 at 6.

**17.** Plaintiffs argue that this regulation cannot be the basis for the SBA's finding that control existed because it was not cited in the OHA's opinions. However, the entire framework of the regulations provides a basis for the proposition that control can be found in the provisions of the franchise agreement regardless of the practice of the parties. An agency is clearly permitted to act in accordance with its regulations. It is simply frivolous to argue that an action was arbitrary because the agency failed to cite one of the regulations which permits that action.

**18.** Def.Opp. at 10.

**19.** Plaintiffs' argument that the same franchise agreement in *Handyman* did not result in a finding of control misses the point. As explained above, *Handyman* was decided under different regulations which did not permit the agency to investigate the agreement for evidence of control once the profit and risk test was met. Thus, the agency never addressed the question of whether that agreement should be the basis for a finding of control based on common management.

tion will be denied. Furthermore, as there are no material facts in dispute and all questions to be resolved are questions of law based upon the standard for APA review, this case is an appropriate one for summary judgment. Because plaintiffs have not met their burden of proving that the agency's actions were arbitrary and capricious, summary judgment will be granted in defendants' favor.